# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GEORGE X,                                    )
      Plaintiff,                            )
      v.                                    )    C.A. No.: N24C-10-237 FJJ
                                            )
PAUL H. MORRILL, JR.,                        )
THOMAS J. PARAG, DAVID L.                    )
BAYLOR, SHANE MILLER, and                    )
WILLIAM J. RHODUNDA, JR.,                    )
      Defendants.                           )
      -And-                                 )
                                            )
PAUL L. PARETS and                           )
THOMAS PARAG,                                )
      Counterclaim Plaintiffs/              )
      Third-Party Plaintiffs,               )
      v.                                    )
GEORGE X,                                    )
      Counterclaim Defendant,               )
      -And-                                 )
                                            )
ZEP TEPI INSTITUTE, INC.,                    )
      Third-Party Defendant.                )

Submitted: June 16, 2026
Decided: June 17, 2026

**OPINION AND ORDER**
*On David L. Baylor, Shane Miller and William J. Rhodunda*
*Motion for Summary Judgment*
**GRANTED**

*On Plaintiff's Integrated Motion for Summary Judgment*
**GRANTED in part; DENIED in part.**

*Mr. George X,* Delaware City, Delaware, *Pro-Se Plaintiff.*

*William J. Rhodunda, Esquire,* Wilmington, Delaware, *Attorney for Defendants.*

**Jones, J.**

This lawsuit involves a claim asserted by the Plaintiff, George X ("Mr. X"), that a detached garage, as well as a basketball pole, backboard, rim and net (collectively referred to as "hoop") are encroaching on property to which Plaintiff has access to by virtue of a right of way, thereby causing a diminution in value to his property. Plaintiff has sued several people, including David A. Baylor, Shane Miller and William H. Rhodunda, who are Delaware City officials (collectively referred to as "City Defendants"). The City Defendants have moved for summary judgment on the basis of qualified immunity. Plaintiff has filed an Integrated Motion for Summary Judgment. This is the Court's decision on the motions.

## STANDARD OF REVIEW

Superior Court Civil Rule 56(c) states a party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] "A genuine issue of material fact is one that 'may reasonably be resolved in favor of either party.'"[2] The court views the evidence provided "in a light most favorable to the non-moving party."[3] The initial burden is on the moving party to show there are no genuine issues of material fact.[4] The burden then shifts to the non-moving party to show there is at

---

[1] Del. Super. Ct. Civ. R. 56(c).
[2] *Saunders v. Lightwave Logic, Inc.*, 2024 WL 4512227, at *6 (Del. Super. Ct. Oct. 17, 2024) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979)).
[3] *Gibson v. Metro. Grp. Prop. And Cas. Ins. Co.*, 2017 WL 5606714, at *2 (Del. Super. Ct. Nov. 15, 2017) (citing *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991)).
[4] *Id.*

least one material issue of fact in dispute.[5]  The court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," in determining whether there is a genuine issue as to any material fact,[6] and the court must "accept all undisputed factual assertions and accept the nonmoving party's version of any disputed facts."[7]  However, any factual inferences made in favor of the non-moving party must be reasonable.[8]

## FACTUAL BACKGROUND

Mr. X owns the property at 301 Bayard Street which is located within the limits of Delaware City, Delaware.  Adjacent to Mr. X's property is a property owned by Defendant Thomas Parag ("Parag").  Between these two properties lies an approximately 14-foot strip of land that is owned by Delaware City (hereinafter this strip of land will be referred to as "the right of way").  Plaintiff has the right to use this right of way to access his property.[9]

Sometime in 2023, Parag installed the hoop in the right of way.  There is no factual dispute that the hoop was installed by or at the direction of Parag.[10]  This Court has granted partial summary judgment against Parag in favor of the Plaintiff

---

[5] *Id.*

[6] *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Ct. Nov. 10, 2016) (quoting Del. Super. Ct. Civ. R. 56(c)).

[7] *Id.* (quoting *Sztybel v. Walgreen Co.*, 2011 WL 2623930, at *2 (Del. Super. Ct. June 29, 2011)).

[8] *Smith v. Haldeman*, 2012 WL 3611895, at *1 (Del. Super. Ct. Aug. 21, 2012) (citing *Mergenthaler v. Asbestos Corp. Of America, Inc.*, 1988 WL 16284, at *5 (Del. Super. Ct. July 13, 1988).

[9] There is a separate strip of land owned by Delaware City which is approximately 4 feet wide and divides Mr. X's property and the garage owned by Parag.

[10] Def.'s Amended Motion for Summary Judgement ("Def.'s MSJ"), Docket Item ("D.I.") 448, at ¶ 31; D.I. 258, at 9.

finding that Parag committed a trespass against Plaintiff due to the placement of the basketball hoop.[11] A basketball hoop and net were installed on the pole. Mr. X immediately began complaining to City Officials about the installation of the hoop. He filled out a complaint form which he sent to Delaware City. The complaint form provided the following:[12]

## Delaware City Code Complaint Form

Date of Complaint: July 09, 2023

Address/Property location: 301 Bayard Street, Delaware City, Delaware 19706

Nature of the complaint (Use space below and please be specific):

There is an encroachment upon my landowner property rights at the above referenced address by a neighbor (i.e., Thomas J. Parag). On Saturday, July 08, 2023, about 1:00 PM, the neighbor ("Parag"), along with several associates, built a permanent structure, e.g., a basketball hoop and installed iron slabs on the appurtenances and rights-a-ways of the property situated at 301 Bayard Street, Delaware City, Delaware 19706 as set forth in the written terms of the enabling Deed.

Complainant Signature: _George X_

Date Received _____ / ___ / _____ Time Received ___ : ___ AM/PM

Received by: _____

Notes:

Name: George X

Address: 301 Bayard Street

City, State & ZIP: Delaware City, Delaware 19706

Phone: 302-528-7344

Email: brogeorgex@gmail.com

| Assigned To: | Date Assigned: |
| --- | --- |
| Assigned by: | |

---

[11] D.I. 258, at 9-10.
[12] D.I. 201, Exhibit ("Ex.") A.

4

Mr. X forwarded his complaint via email to Michael Henderson, the chief of the Delaware City Police Department. The subject line of the emails between Mr. X and Henderson was entitled "Encroachment upon property rights." Mr. X had further email correspondence with two other Delaware City officials about his complaint: 1) David Baylor, the Delaware City Manager at the time; and 2) Shane Miller ("Miller"), who was then Delaware City's Code Enforcement Officer. As seen below, Baylor sent an email back to Mr. X on July 13, 2023:[13]



Mr. X received another email response from Miller on July 17, 2023:[14]

---

[13] D.I. 1, ¶ 18; *see also* D.I. 1, Ex. 5.
[14] *Id.* at ¶ 19; *see also* D.I. 1, Ex. 6.



**Code Complaint 07/09/2023**

Shane Miller <SMiller@ci.delaware-city.de.us>                              Mon, Jul 17, 2023 at 10:37 AM
To: "Bro. George X" <brogeorgex@gmail.com>

George,

I have received your complaint regarding the basketball hoop that was installed on your property. I spoke with David Baylor that advised me that he reached out to you to notify you that this is a civil matter. Code Enforcement has no authority to have the basketball hoop removed from your property. I am sorry that I cannot be of more help. Any other questions let me know!

Shane Miller

Code Enforcement

Delaware City took no further action. William Rhodunda is the Delaware City Solicitor. The lawsuit in this matter was filed on October 22, 2024.[15] The hoop was removed in December 2024.[16]

In February 2025, Ronald Sutton ("Sutton"), at the request of Mr. X, surveyed the property. Sutton had also surveyed the property in 2020, at which time he came in and set the corners.[17] Sutton is a licensed civil engineer who has performed thousands of surveys over the years.[18] Sutton further testified that there's a 4-foot alleyway, which is owned by Delaware City, between the garage, the property line of Parag and Mr. X.[19] When questioned about the hoop, Sutton stated that the hoop had been removed by the time he did his 2025 survey, but he

---

[15] D.I. 1.
[16] D.I. 51, ¶ 1; *see also* D.I. 63, ¶ 1.
[17] D.I. 150, Ex. B at 7-8 (page numbers indicate the transcript page referenced).
[18] *Id.* at 6, 9.
[19] *Id.* at 10.

was able to identify the remnants of where the hoop was located.[20] The remnants of the hoop were situated in the right of way between the properties on land owned by Delaware City.[21] Sutton clearly testified that the hoop was not located on property owned by George X.[22]

## ANALYSIS
### Defendants' Motion

Plaintiff's complaint alleges that the City Defendants were negligent in failing to properly investigate and address the Plaintiff's complaint as to the basketball hoop. Plaintiff's Fourth Amended Complaint makes claims against the City Defendants in both their personal and official capacity.[23] At a hearing before this Court on August 27, 2025, Plaintiff agreed that he was suing the City Defendants only in their official capacity.[24] Now he claims that he is suing the City Defendants in both their personal capacity and official capacity. City Defendants respond that given the Plaintiff's prior representation in court that he has waived any claims against the City Defendants beyond those claims that are based on their official capacity, they should not have to defend a personal suit as well.

---

[20] *Id.* at 10-11.
[21] *Id.* at 11.
[22] *Id.*
[23] Plaintiff's Fourth Amended Complaint, D.I. 111, at 4-6.
[24] *See* Oral Argument recording of August 27, 2025 - 11:08 - 11:10 am.

As to any personal claims against the City Defendants, they are entitled to an entry of summary judgment in their favor for two reasons. First, Plaintiff agreed on August 27, 2025, in open court that he was not pursuing any claims against them beyond the claims that were based on their status as city officials. Second, even if the Plaintiff had not waived these claims, City Defendants are entitled to summary judgment as to any personal claims filed against them. There is no evidence that any of the City Defendants were ever acting outside of their official duties when they took the actions that they took or did not take. In a negligence action a Plaintiff must show that a Defendant owed a duty to the Plaintiff. There is simply no duty on the part of the three City Defendants toward Mr. X that does not arise out of their duties as city officials. Given the lack of duty, the City Defendants are entitled to summary judgment on any and all claims not based on their actions as City officials.

I now turn to the claims against the City Defendants based on their actions as Delaware City officials.

As an employee and/or agent of Delaware City, any claims against these three gentlemen are controlled by the County and Municipal Torts Claims Act, 10 *Del.C.* §4011. Section 4011 provides as follows:

> (a) Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or

8

be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

(b) Notwithstanding §4012 of this title, a governmental entity shall not be liable for any damage claim which results from:

   (1) The undertaking or failure to undertake any legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, regulation, resolution or resolve.
   (2) The undertaking or failure to undertake any judicial or quasi-judicial act, including, but not limited to, granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial.
   (3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid.

(c) An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent.[25]

The act makes it clear that municipal employees are immune from suit for discretionary actions taken within the scope of their official duties unless their actions are not taken in good faith, done with gross or wanton negligence, or with wilful and malicious intent. The City Defendants are not immune from suit if it

---

[25] 10 *Del. C.* §4011.

can be said that their actions were ministerial.[26] The first question is whether the City Defendants were engaged in a ministerial or discretionary act.[27]

In *Greenfield as Next Friend of Ford v. Miles* (*"Greenfield"*) the Delaware Supreme Court addressed the question of ministerial versus discretionary acts.[28] In *Greenfield*, the Plaintiff sued a number of Defendants who worked for the Delaware Division of Family Services ("DFS").[29] The Plaintiff alleged that these Defendants contributed, in one fashion or another, to four faulty investigations or reports that Ford and/or his sibling were being abused and neglected by their mother.[30] The complaint further alleged that the Defendants' dereliction of duty resulted in the tragic death of one child and severe injuries to Ford.[31] Defendants moved to dismiss the case on the basis of sovereign immunity under the State Torts Claim Act.[32] Citing a Delaware statute that mandates the reporting and investigation of child abuse and neglect, Plaintiff maintained that the Defendants' actions were ministerial rather than discretionary and, therefore, not subject to immunity.

---

[26] *Greenfield as Next Friend for Ford v. Miles*, 211 A.3d 1087, 1098 (Del. 2019); *Wicks v. Delaware Veterans Home*, 2023 WL 5497040 (Del. Super. Ct. Aug. 24, 2023); *see also* 10 *Del. C.* §4001.
[27] *See Greenfield*, 211 A.3d at 1097-1101; *Wicks*, 2023 WL 5497040, at *4-5.
[28] *Greenfield*, 211 A.3d at 1097-1101.
[29] *Id.* at 1090.
[30] *Id.*
[31] *Id.*
[32] 10 *Del.C.* §4000 *et seq*.

The *Greenfield* Court rejected the Plaintiff's argument. The court defined ministerial duties as acts that "involve[] less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act."[33] The court said that "a duty is discretionary if and only if the state actor faced a range of reasonable choices while performing those duties."[34] In determining whether the acts of the DFS caseworkers were ministerial or discretionary, the court reasoned that "if DFS caseworkers simply did not conduct such an assessment, they would have failed to perform a ministerial duty but determining whether an actual home assessment was poorly conducted entails analyzing the exercise of discretion of those social workers."[35]

The clear teaching of *Greenfield* is that if the public officials who were charged with investigating an action investigated the claim, but did so poorly or negligently, their actions would be discretionary and fall within the immunity statute. Conversely, if the public officials did not conduct the required investigation, then they would have failed to conduct a ministerial duty that was required of them and would not have the protections of the immunity statute.[36]

---

[33] *Id*. at 1098 (quoting Restatement (Second) of Torts § 895D, cmt. h (1979)) (internal quotation marks omitted).
[34] *Id.* at 1099.
[35] *Id* at 1100.
[36] The *Greenfield* case was decided under the State Torts Claims Act. The instant case is governed by the County and Municipal Torts Claims Act. This Court sees no distinction between the two statutes that would require a different analysis under the acts in determining whether an action is ministerial or discretionary.

11

Plaintiff points to various Delaware City ordinances to argue that the City officials were required to conduct an investigation and their failure to do so was a violation of a ministerial act. This is substantially the same argument that was raised by the Plaintiff in *Greenfield* and rejected by the Supreme Court. As was the case in *Greenfield,* the record demonstrates that the City Defendants did conduct an investigation.

Plaintiff disputes that the City Defendants conducted any type of investigation. This argument is simply not supported by the evidence as made clear by the affidavits submitted by Miller, Baylor and Rhodunda in this case. Even putting aside the affidavits, the July 13, 2023 email from Baylor to Plaintiff and the July 17, 2023 email from Miller to Plaintiff make it clear that an investigation was done. Since the City Defendants investigated Plaintiff's complaints, their actions are not considered ministerial but discretionary in terms of the immunity analysis. The question now becomes whether the Plaintiff has demonstrated that the City Defendants acted in bad faith, were grossly or wantonly negligent, or acted with wilful and malicious intent in order to fall within the exception for immunity.

In *Brittingham v. Board of Adjustment of City of Rehoboth Beach*, this Court had occasion to address the definition of bad faith:

> The Brittinghams cite to Black's Law Dictionary for the definition of bad faith as "[t]he opposite of 'good faith,'

12

generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." BLACK'S LAW DICT. 139 (6th ed.1990). The definition goes on to say, however, " 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity, it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."

The seventh edition of Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief or purpose." BLACK'S LAW DICT. 134 (7th ed.1999).

\* \* \*

The common thread in all of the definitions of bad faith given is that there is some kind of dishonest motive or purpose. There is, thus, the implication of an element of scienter. For example, in *Desert Equities, Inc.,* 624 A.2d at 1208, the Court stated, "a claim of bad faith hinges on a party's tortious state of mind."[37]

Gross negligence requires a state of mind above and beyond mere negligence. "Gross negligence is a higher level of negligence representing 'an extreme departure from the ordinary standard of care.'"[38] Wanton conduct is "'such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended.'"[39] "The

---

[37] *Brittingham v. Bd. of Adjustment of City of Rehoboth Beach*, 2005 WL 1653979, at \*1-2 (Del. Super. Ct. Apr. 26, 2005).

[38] *Brown v. Robb*, 583 A 2d 949, 953 (Del 1990) (quoting W. PROSSER, HANDBOOK OF THE LAW OF TORTS 150 (2d ed. 1955)).

[39] *McCaffrey v. City of Wilmington*, 133 A.3d 536, 547 (Del. 2016) (quoting *Wagner v. Shanks*, 194 A.2d 701, 706 (Del. 1963)).

13

'conscious indifference' aspect of wantonness requires an 'I-don't-care' attitude."[40]

When the facts are viewed in a light most favorable to the Plaintiff, the record is clear that Plaintiff has not proven any of the City Defendants acted in bad faith, with gross or wanton negligence or with wilful or malicious intent. In support of each of their motions for summary judgment, each of the City Defendants produced an affidavit outlining the actions they took and why they took them. The affidavit of David Baylor captures the essence of the actions taken by the City Defendants. The affidavit provides in relevant part:

> 1. I previously held the position of Town Manager for the City of Delaware City.
>
> 2. During my employment as Town Manager of the City of Delaware City, I was familiar with, and had a number of conversations and interactions with, George X (hereinafter "Mr. X"). …
>
> 4. While still employed as Town Manager, I learned that Mr. X had lodge a complaint regarding a basketball court that was installed on or about July 8, 2023 by Mr. X's adjoining neighbor, Thomas J. Parag (hereinafter "Mr. Parag"). In particular, on or before July 13, 2023, Mr. X voiced a complaint with the City of Delaware City which was initially directed to my attention.
>
> 5. As a result of Mr. X's complaint, I visited Mr. X at his property located at 301 Bayard Street, Delaware City, Delaware 19706 on the afternoon of July 13, 2023 and listened to his concerns.

---

[40] *Id.* (quoting *McHugh v. Brown*, 125 A.2d 583, 586 (Del. 1956)).

6. Although I was informed that Mr. X's complaint related to what X referred to as a "basketball court," upon my arrival at Mr. X's property, I observed that what he was calling a "basketball court' was, in reality, a metal pole in the ground with a backboard, rim and net attached at the top (hereinafter, the "basketball structure").

7. According to Mr. X, Mr. Parag had installed the basketball structure on property owned by Mr. X. As a result, Mr. X was of the opinion that the placement of the basketball structure constituted an encroachment upon his land. Mr. X also believed in this regard that the location of the basketball structure represented a violation of the Code of the City of Delaware City and wanted my office to become involved and have the basketball structure removed immediately. Mr. X indicated that, as a result of the alleged encroachment, he had sustained some sort of uncertain economic loss.

8. Following my discussion with Mr. X, and my visual observation of the basketball structure and where it was installed relative to what appeared to be Mr. Parag's and Mr. X's respective property boundaries, I told Mr. X that I would be back in touch with him after speaking with Mr. Parag and after Delaware City's investigation had been concluded.

9. I then spoke to Mr. Parag, who resides next door to Mr. X at 300 Franklin Street, Delaware City, Delaware 19706 regarding Mr. X's complaint relative to the location of the basketball structure. Mr. Parag conceded that he had the basketball structure installed several days ago. However, contrary to Mr. X's believes, Mr. Parag was of the opinion that he was within his rights to erect the basketball structure because, according to Mr. Parag, the basketball structure was situation on property he owned.

10. Upon inspecting the two (2) properties - which are immediately adjacent to, and touching, one another, I came to the initial conclusion that it appeared more likely that the basketball structure was located on Mr. Parag's land rather

15

than on Mr. X's property. In this regard, a large telephone pole was located in between Mr. X's property and Mr. Parag's property and the basketball structure appeared to be approximately four or five feet from the electrical pole, toward Mr. Parag's property… The basketball structure had been located to the left of the pole if one were standing on the street, looking toward the properties. …

12. In light of the fact that these two (2) adjoining neighbors had expressed diametrically opposite positions concerning who owned the land where the basketball structure had been erected, I asked (then) Code Enforcement Officer Shane Miller (hereinafter, "Mr. Miller") to please inspect the two (2) adjoining properties, as well as the basketball structure violated any provision of the Code of the City of Delaware City and/or whether the issue Mr. X raised was a matter the City of Delaware City should be concerned about. Mr. Miller indicated that he understood the situation and that he would report back to me concerning his observations and findings.

13. After inspecting the properties, Mr. Miller informed me that he did not find there to be any violations of the Code of Delaware City insofar as the basketball structure did not appear to him to be located on property owned by Delaware City and also that, even if it was located on Delaware City property, the basketball structure was not a major concern to Code Enforcement.

14. Based upon my observations, discussions with the parties, and my conversation with Mr. Miller, I did not believe Mr. X's complaint involved a violation of any specific provision of the Code of the City of Delaware City. Nor was I of the opinion that Mr. X's complaint was of particular concern to the Delaware City Government. Instead, this seemed to me a dispute amount or between adjoining landowners and was, therefore, civil in nature.

15. As a result of my beliefs, I verbally informed Mr. X that, if he believed Mr. Parag was encroaching upon his property, he should order a survey and perhaps file a civil suit

16

against Mr. Parag. I also indicated to Mr. X that, if he believed Mr. Parag was committing criminal trespass upon Mr. X's property, Mr. X would do well to call the police.

16. Thereafter, the same day (July 13, 2023), I sent Mr. X an email to confirm my earlier conversation with him. The email stated the following:

> I have reviewed your complaint. The issue that you have outlined is not a city issue. This would be considered a property rights issue and therefore it is civil in nature. The proper authority over matters such as you[s] would be to file a civil complaint in the Magistrate Court System. As you are aware, I am not an attorney and therefore cannot give you legal advice, if you have any questions regarding the legality of your situation, I would urge you to contact an attorney.
>
> I have included our City Solicitor on this email. Should you contact a lawyer, and have any legal questions involving the city of Delaware City, please have your attorney contact the City Solicitor.

17. Mr. Miller separately wrote to Mr. X on July 17, 2023 and expressed his findings in an email which stated, as follows:

> I have reviewed your complaint regarding the basketball hoop that was installed on your property. I spoke to David Baylor [who] advised me that he reached out to you to notify you that this is a civil matter. Code Enforcement has no authority to have the basketball hoop removed from your property. I am sorry that I cannot be of more help. Any other questions let me know.

18. Following the emails from Mr. Miller and from me, neither of us heard from Mr. X again regarding this matter, and we were not asked by anyone to conduct any follow-up

investigation or to otherwise involve ourselves or anyone else employed by the City of Delaware City in this matter. …

21. Additionally, at no time during our discussions did Mr. X suggest that the basketball structure might be situated on property owned by the City of Delaware City. Instead, he kept insisting that he [sic] basketball structure was actually located on *his* property.[41]

In his affidavit, Mr. Miller states in relevant part:

2. During my employment as Code Enforcement Officer for the City of Delaware City, I became familiar with George X (hereinafter "Mr. X") and his property located at 301 Bayard Street, Delaware City, Delaware 19706. …

5. In light of Mr. X's complaint about the existence and location of the basketball hoop, I was assigned by Town Manager David L. Baylor (hereinafter, "Mr. Baylor") to investigate the situation to determine whether the basketball hoop constituted a violation of the Code of Delaware City such that the City of Delaware City may need to become involved.

6. Per Mr. Baylor's instructions, I visited Mr. X's property and made some visual observations regarding his property, the basketball pole hoop, as well as the property next door which is owned by Mr. Parag. It appeared to me that the basketball hoop was position on Mr. X's property. Assuming this to be the case, it was my belief that the City of Delaware City had no authority to order Mr. X to remove the basketball hoop. Alternatively, if the basketball hoop was located on property owned by Mr. Parag, the City of Delaware City would again have no authority to instruct Mr. Parag to remove it. I did not believe that the location of the basketball hoop violated any provision of the Code of the City of Delaware City but, instead, it appeared to me to be a civil dispute between two adjoining neighbors.

---

[41] Affidavit of David L. Baylor, D.I. 239.

7. Thereafter, based upon my earlier observations and conclusions, and my initial belief that the basketball hoop was actually on Mr. X's property, on July 17, 2023 I sent an email to Mr. X in which I stated the following:

> I have reviewed your complaint regarding the basketball hoop that was installed on your property. I spoke to David Baylor that advised me that he reached out to you to notify you that this is a civil matter. Code Enforcement has no authority to have the basketball hoop removed from your property. I am sorry that I cannot be of more help. Any other questions let me know.

8. Following my email, I never heard from Mr. X again regarding this matter.[42]

Finally, in Mr. Rhodunda's affidavit, he states in relevant part:

1. I am currently the City Solicitor for the City of Delaware City, a position I have held since 2020.

2. During my employment as City Solicitor for the City of Delaware City, I became familiar with, and had a number of conversations and interactions with, George X ("hereinafter "Mr. X") related to the pending litigation he initiated. …

9. Additionally, as a result of his investigation, on the afternoon of July 13, 2023, Mr. Baylor sent an email to Mr. X, which stated the following:

> I have reviewed your complaint. The issue that you have outlined is not a city issue. This would be considered a property rights issue and therefore it is civil in nature. The proper authority over matters such as you[s] would be to file a civil complaint in the Magistrate Court System. As you are aware, I am

---

[42] Affidavit of Shane Miller, D.I. 239.

not an attorney and therefore cannot give you legal advice, if you have any questions regarding the legality of your situation, I would urge you to contact an attorney.

I have included our City Solicitor on this email. Should you contact a lawyer, and have any legal questions involving the city of Delaware City, please have your attorney contact the City Solicitor.

10. Insofar as I was carbon-copied on Mr. Baylor's email to Mr. X, I was made aware of Mr. X's complaint, as well as Mr. Baylor's conclusions and suggestions. I was also aware that Mr. Baylor's email invited Mr. X to contact me in the event he had "any legal questions involving the city of Delaware City." As such, I was on notice that Mr. X might be contacting me regarding his complaint; however, Mr. X never contacted me.

11. It was not until October, 2023 when I learned additional details regarding Mr. X's complaint vis-à-vis the lawsuit that Mr. X filed.[43]

The affidavits demonstrate that Plaintiff made a complaint to the City and Baylor and Miller responded to that complaint. When the facts are viewed in a light most favorable to Plaintiff, they could support a conclusion that the investigation conducted was incomplete and not comprehensive enough. However, the facts set forth in the affidavits do not show that any of the City Defendants acted in bad faith, were grossly or wantonly negligent, or acted willfully or maliciously. The affidavits do not come anywhere close to showing

---

[43] Affidavit of William J. Rhodunda, Jr., D.I. 239.

bad faith, gross or wanton negligence, or willful or malicious actions on the part of any City Defendants.

Once the City Defendants produced evidence showing a lack of bad faith, gross negligence or wanton conduct, Plaintiff, under Superior Court Civil Rule 56, was required to produce evidence, not simply arguments, that the City Defendants conduct supported a claim of bad faith, gross or wanton negligence, or willful or malicious actions. Plaintiff has simply not produced any evidence that the City Defendants actions were done in bad faith, were grossly or wanton negligent, or done willfully or maliciously. The facts as presented simply do not support such a finding that triggers an exception to immunity. Therefore, City Defendants are entitled summary judgment.

For the above, the Motion for Summary Judgment filed by David Baylor, Shane Miller and William Rhodunda is **GRANTED**.

### Plaintiff's Integrated Motion for Summary Judgment

Plaintiff has filed a pleading entitled "Integrated Motion for Summary Judgment."[44] Attached to the motion is a form of order in which the Plaintiff seeks 12 prayers for relief. The Court will address each of those requests.

In this opinion the Court has **GRANTED** summary judgment in favor of the City Defendants. The Plaintiff's request as to prayers for relief 3, 4, 5, 6, 7, 8,

---

[44] D.I. 442.

21

9, 10 and 11 are **DENIED** given the entry of summary judgment in favor of the City Defendants.

Prayer for relief number 1 asks this Court to grant summary judgment in favor of the Plaintiff. As to the City Defendants, this request is **DENIED** based on this Court's finding of summary judgment in their favor. As to Defendant Parag, this request is **DENIED** because there are genuine issues of material fact surrounding causation and damages.

Prayer for relief number 2 asks the court to find that no genuine issue of material fact exists that Defendant Thomas J. Parag installed the basketball and supporting structure within the Delaware City right-of-way burdening Plaintiff's appurtenant easement and use rights. The Court **GRANTS** Plaintiff's request to find that Parag installed the basketball goal within the Delaware City right-of-way. The remaining requests are **DENIED** as they involve genuine issues of material fact.

As to prayer 12, the Court agrees that the issue of damages remains for trial as to Defendant Parag.

**IT IS SO ORDERED.**

/s/ Francis J. Jones, Jr.
Francis J. Jones, Jr., Judge

cc:    Counsel of Record via *File&ServeXpress*

22